IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF PENNSYLVANIA

_____ :
                                  :
SHAWNBREAN DAVIS                  :    CIVIL ACTION
                                  :
          v.                      :    NO.: 02-cv-2665
                                  :
SOUTHEASTERN PENNSYLVANIA         :
TRANSPORTATION AUTHORITY          :
_____ :


<u>ORDER</u>

AND NOW, this ___ day of _____, 2003, upon consideration of Defendant SEPTA's Motion For Summary Judgment pursuant to Fed. R. Civ. P. 56 and any opposition thereto, it is hereby ORDERED that Defendant's Motion is GRANTED and Plaintiff's Complaint is dismissed in its entirety with prejudice.


BY THE COURT:


_____
Louis H. Pollak, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____  :
                                 :
SHAWNBREAN DAVIS                  :    CIVIL ACTION
                                 :
            v.                    :    NO.: 02-CV-2665
                                 :
SOUTHEASTERN PENNSYLVANIA         :
TRANSPORTATION AUTHORITY          :
_____  :


<u>DEFENDANT SEPTA'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), by its attorneys, respectfully moves this Court for an Order, pursuant to Fed. R. Civ. P. 56, dismissing the Plaintiff's entire Complaint with prejudice and, in support thereof, states:

1.  Plaintiff, Shawnbrean Davis ("Mr. Davis"), filed a Complaint against SEPTA on May 3, 2002.

2.  In the Complaint, Mr. Davis claims that SEPTA violated the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") by failing to reasonably accommodate his alleged disabilities.

3.  Mr. Davis, however, is not a qualified individual with a disability as those terms are defined under these Acts.

WHEREFORE, for the foregoing reasons and those stated in the accompanying Memorandum of Law, Defendant SEPTA respectfully requests that this Court grant its Motion and dismiss the

Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 56.

                              Respectfully submitted,

                              MILLER, ALFANO & RASPANTI, P.C.


                              BY: _____
                                  GINO J. BENEDETTI, ESQUIRE
                                  JODEEN M. HOBBS, ESQUIRE

                              Attorney I.D. Nos. 59584, 80200
                              Miller, Alfano & Raspanti, P.C.
                              1818 Market Street, Suite  3402
                              Philadelphia, PA 19103
                              (215) 972-6400

                              Attorneys for Defendant,
                              Southeastern Pennsylvania
                              Transportation Authority

Dated: July __ , 2003

F:\PBL\JMH\SEPTA\Septa.Davis\gh000024.pld.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                    :
SHAWNBREAN DAVIS                    :    CIVIL ACTION
                                    :
        v.                          :    NO.: 02-CV-2665
                                    :
SOUTHEASTERN PENNSYLVANIA           :
TRANSPORTATION AUTHORITY            :
_____:


DEFENDANT SEPTA'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

    Defendant, the Southeastern Pennsylvania Transportation Authority ("SEPTA"), by its attorneys, respectfully submits this Memorandum of Law in further support of its Motion for Summary Judgment.


I.    PRELIMINARY STATEMENT

    Shawnbrean Davis worked as a bus driver for SEPTA until December of 1990 when he allegedly injured his knee. He was out of work until March of 1991. When he attempted to return to work, SEPTA medically disqualified him from driving a bus because he did not meet the minimum vision requirement.

    Mr. Davis sought other SEPTA positions that did not have a minimum vision requirement. He was not hired into any other position.

In this case, Mr. Davis claims that SEPTA failed to place him in any other job because of his poor vision and/or his knee injury in violation of the Americans with Disabilities Act and the corollary provisions of the Pennsylvania Human Relations Act. To be protected under these laws, however, one must be a "qualified individual with a disability." Mr. Davis is neither disabled nor qualified as those terms are defined.

Mr. Davis is not disabled because: 1) neither his poor vision nor his knee injury substantially impair his ability to engage in any major life activity; 2) Mr. Davis did not have a record of an impairment; and 3) SEPTA did not regard him as disabled. Further, even assuming Mr. Davis is disabled, he is not qualified for protection under the law for two reasons. First, because of his poor attendance and discipline record he could not meet the essential functions of any SEPTA job. Second, Mr. Davis offers no evidence to rebut the legitimate non-discriminatory reasons for not hiring him.

For these reasons, summary judgment is warranted.


II. PROCEDURAL HISTORY

On May 3, 2003, Mr. Davis filed a Complaint against SEPTA alleging that SEPTA violated the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") by

-2-

failing to reasonably accommodate his alleged vision disability. On November 18, 2002, SEPTA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The premise of the motion was that Mr. Davis was not disabled because he conceded his ability to work. In denying the motion, this Court concluded that SEPTA had built an incomplete argument for the dismissal of Mr. Davis' case as there were other areas in which Mr. Davis possibly could establish that he was disabled. <u>See</u> April 18, 2003, Order and accompanying Memorandum.

Discovery was taken on this and other issues related to Mr. Davis' allegations. SEPTA, now with the benefit of discovery, moves for summary judgment on all claims.[1]

---

[1]    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Rule 56, however, "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323.

III. <u>SUMMARY OF UNCONTESTED FACTS</u>

    A.   Mr. Davis Was Medically Disqualified from Driving
        <u>A Passenger Bus Based upon His Poor Vision</u>

Mr. Davis was employed by SEPTA beginning in 1988 as a bus driver. <u>See</u> Exhibit 1 at 37-38 (April 15, 2003 deposition of Shawnbrean Davis referred to hereinafter as "Davis Dep."). On December 18, 2000, Mr. Davis reported that he suffered a knee injury at work which required surgery. <u>See</u> Davis Dep. at 103. In March of 2001, Mr. Davis attempted to return to work at SEPTA as a bus driver. Prior to returning, however, Mr. Davis was required to pass a standard vision test that was applicable to all bus drivers. <u>See</u> Davis Dep. at 39.

Mr. Davis failed this vision test and, therefore, on March 21, 2001, SEPTA medically disqualified him from returning to work at SEPTA as a bus driver. <u>See</u> Exhibit 2 (a), (b) and (c) (Defendant's First Set of Requests for Admissions and Plaintiff's Answers, collectively referred to hereinafter as "First Admissions");[2] <u>see also</u> Davis Dep. at 11.

---

     [2]   For the record, each discovery request and answer is attached separately. For the Court's convenience, the requests and answers have been combined at Tab (c) to Exhibits 2, 6, and 8.

-4-

### B.  Mr. Davis' Attempts to Find Another SEPTA Job

Mr. Davis applied for SEPTA jobs as a track laborer, as a mail carrier, as a maintenance custodian and as a telephone information agent.  See Davis Dep. at 106, 114 and 115.  Mr. Davis was medically capable of working in all these jobs.  See Davis Dep. at 116.  Mr. Davis also was "ready, willing and able to perform all duties of jobs offered with or without accommodation."  See Exhibit 3 (Complaint ¶ 19).  SEPTA did not hire Mr. Davis into any of these jobs because of Mr. Davis' poor attendance and discipline record. See Exhibit 4 at 66-73 (May 7, 2003 Deposition of Linda Yoxtheimer, SEPTA's Assistant Director of Vocational Rehabilitation, referred to hereinafter as "Yoxtheimer Dep.").

### C.  Mr. Davis' Vision Impairment

Mr. Davis has 20/20 vision in his right eye.  See Exhibit 5 (November 20, 2001 letter from Nicholas J. Volpe, M.D. to SEPTA Medical Department).  He has a static problem in his left eye that reduces his visual acuity to 20/30-.  Id.  Mr. Davis refers to his vision problems as "high myopia" and "lazy eye."  See First Admissions at No. 3.

No doctor, however, has restricted Mr. Davis' ability to work based upon his vision problem.  See First Admissions at No. 6.  Nor has his vision problem prevented him from finding other work.

-5-

Mr. Davis, since leaving SEPTA, has been employed at the Children's Hospital of Philadelphia as a custodian (id. at No. 7) and at Federal Express as a delivery driver (id. at No. 8). His own eye doctor has cleared him to work "in a tunnel and as a track laborer of any type." See Exhibit 5.

Mr. Davis currently is employed full-time at the Hospital of the University of Pennsylvania as a nursing assistant. See Davis Dep. at 30. At this job, he makes sure that the proper equipment is in place for the doctors and nurses. Id. at 31. He also cleans rooms and transports patients. Id.

Mr. Davis' vision problem does not preclude him from activities of every day life. Mr. Davis is able to prepare himself for work each day without assistance. See Exhibit 6 at No. 1. (Second Set of Requests for Admissions and Answers, collectively referred to hereinafter as "Second Admissions"). He travels to and from his job without assistance. Id. at No. 2. Mr. Davis is able to read, write and speak. Id. at Nos. 4, 5 and 6. Due to diminished peripheral vision, Mr. Davis "favors" one ear but does not have any hearing loss. Id. at No. 8. Mr. Davis can read without the use of contact lenses or glasses by holding the paper "up close near [his] eyes." Id. at No. 9.

Mr. Davis holds a valid Pennsylvania drivers license, is permitted to drive in Pennsylvania without restrictions and does so

near his home.  <u>See</u> First Admissions at 10, 11 and Second Admissions at 3.  Mr. Davis states only the following limitations related to his poor vision:

> <u>Seeing</u> out of one eye; favoring other eye; positioning my body for good eye; lost peripheral vision/<u>Working</u> with favoring one side; loss of peripheral vision; headaches/<u>ADL's</u> (activity of daily life) always be cautious/war (sic) with good eye.

<u>See</u> Exhibit 7 (a), (b) and (c) (First Set of Interrogatories and Responses at No. 1 collectively referred to hereinafter as "First Interrogatories").

When asked to identify all of the ways that his poor vision compromises his ability to engage in any major life activity, including, but not limited to, caring for himself, performing manual tasks, seeing, hearing, speaking, breathing, learning and working, Mr. Davis states only:

> I do not have full view (peripheral view) of objects.  This affects my ability to see speakers and hear noises not in my direct vision.  Increased stress on one eye causes difficulty driving, playing with children and working at HUP.

<u>See</u> Exhibit 8 (a), (b) and (c) (Second Set of Interrogatories and Responses at No. 8 collectively referred to hereinafter as "Second Interrogatories").  At his deposition, Mr. Davis added that his vision problem causes him to get headaches.  <u>See</u> Davis Dep. at 111. Finally, Mr. Davis contends that because of his diminished vision,

-7-

he is precluded from certain "[p]olice/security, truck driving/buses, some medical;/scientific positions, [and] military." See First Interrogatories at No. 5.


D.   Mr. Davis' Knee Impairment

In December of 2000, Mr. Davis reported that he injured his knee while on the job at SEPTA.  See Davis Dep. at 102-03.  Because of his knee injury, Mr. Davis contends only that:

> It is very hard to walk/stand, play sports, work, sexual intercourse, foot pedals in driving, climbing steps.

See Second Interrogatories at No. 9.

Mr. Davis does not assert that he cannot walk because of his knee.  He does, however, contend that he limits his walking because of the injury.  See Second Admissions at 7.  Mr. Davis concedes that his knee impairment does not preclude him from working or even from driving a delivery truck for Federal Express.  See Davis Dep. at 32.  In fact in 2001, Mr. Davis drove a home delivery route "[a]ll over the place.  Delaware, Bucks County.  All over the tri-state area."  Id. at 33.

E.    <u>Mr. Davis' Attendance and Work Record</u>

Mr. Davis was actively employed by SEPTA from February of 1998 until December of 2000.  During this time and prior to his knee injury, Mr. Davis did not report to work on 24 occasions (17 sick days and 7 absences due to emergencies at home).  <u>See</u> Exhibit 2B (October 28, 1999 Interview Report).  Under SEPTA's attendance policy, Mr. Davis received 18 credits, adjustments and reversals for these absences.  <u>Id.</u>  Even with these credits, he accumulated 19 points for absences and was warned by SEPTA that he was subject to discipline if he reached 20 points.  <u>Id.</u> at 2.

Further, on September 8, 2000 also prior to the knee injury, Mr. Davis was discharged from SEPTA for engaging in conduct unbecoming of a SEPTA employee.  <u>See</u> First Admissions No. 17 and Exhibit C (Report of Interview reflecting discharge).  Following an informal hearing, Mr. Davis' discharge was reduced to a one-day suspension.  <u>See</u> First Admissions at No. 19 and Exhibit D (Report of Interview reflecting reduction of discharge to suspension).

IV.  <u>LEGAL ARGUMENT</u>

A.  <u>To Be Considered a Disability, Mr. Davis'</u>
<u>Limitations Must in Fact Be Substantial</u>

Mr. Davis contends that both his vision impairment and his knee problem are disabilities protected by the ADA[3].  Mr. Davis' poor vision and/or his knee problem are not disabilities under the ADA.

The ADA requires covered employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee...."  <u>See</u> 42 U.S.C. § 12112(b)(5)(A).  A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  <u>See</u> 42 U.S.C. § 12111(8).

"Disability" is further defined as:

A.  a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

B.  a record of such impairment; or

C.  being regarded as having such an impairment.

---

[3]    The ADA claim is the only claim addressed in this motion as the analysis of an ADA claim applies equally to a PHRA claim.  <u>See</u> <u>Taylor v. Phoenixville School District</u>, 184 F.3d 296, 306 (3d Cir. 1999).

42 U.S.C. § 12102(2).  To be protected under the ADA, under any of the three standards, impairment must be one that creates limitations "that are in fact substantial."  <u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 565 (1999) (holding that monocular vision is not "per se" disabled within meaning of the ADA).  "Merely having an impairment does not make one disabled for the purposes of the ADA.  Claimants also need to demonstrate that the impairment limits a major life activity."  <u>See</u> <u>Toyota Motor Manufacturing, KY, Inc. v. Williams</u>, 534 U.S. 184, 195 (2002)  (<u>relying on</u> 42 U.S.C. § 12102(2)(A)).

According to the EEOC regulations, substantially limit[ed] means:

> (i)  [u]nable to perform a major life activity that the average person in the general population can perform; or

> (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

<u>See</u> 29 CFR § 1630.2(j) (2001).

In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered:  (i) [t]he nature and

severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. <u>See</u> 29 CFR §§ 1630.2(j)(2)(i)-(iii).

The Supreme Court also has stated that:

> "[S]ubstantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree."

<u>See</u> <u>Toyota Motor Manufacturing</u>, 534 U.S. at 196.

Because of the nature of this analysis, the Supreme Court further has ruled that whether a person has a disability under the ADA is an individualized inquiry. <u>See</u> <u>Sutton v. United Airlines, Inc.</u>, 527 U.S. 471, 482 (1999). This inquiry is a question of law for the court. <u>See</u> <u>Toyota Motor Manufacturing</u>, 534 U.S. at 202.

This inquiry is two-fold. <u>See</u> <u>Mondezelewski v. Pathmark Stores, Inc.</u>, 162 F.3d 778, 783 (3d Cir. 1998). First, the court must determine whether an individual is substantially limited in any major life activity other than working. <u>Id.</u> at 784. If an individual is <u>not</u> so limited, the court must then determine if the individual is substantially limited in the major life activity of working. <u>Id.</u>

-12-

1.  To Be Disabled in the Major Life Activity of *Seeing*
    Mr. Davis Must Establish More Than The Mere Existence
    of A Vision Problem

Seeing, under the ADA, is considered to be a major life activity.  See 29 C.F.R. § 1630.2(i).  Merely having a problem seeing, however, does not establish a disability.  See Albertson's Inc., 527 U.S. at 565 (stating that monocular vision is not "per se" disabled within meaning of the ADA).  Further, the ADA requires those "claiming the Act's protection... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience...is substantial."  See Toyota Motor Manufacturing 534 U.S. 184, 198(relying on Albertson's Inc., 527 U.S. at 567).

Several courts have concluded that peripheral vision problems, monocular vision of 20/400, strabismus, minor anisometropia, and mild amblyopia are not per se disabilities.  See Cline v. Fort Howard Corp., 963 F. Supp. 1075, 1079 (E.D. Okla. 1997) (finding that on the record, plaintiff's near sightedness and poor peripheral vision did not amount to a disability); Foore v. City of Richmond, Virginia, 2001 WL 285131, at *3 (4th Cir. March 23, 2001) (holding that monocular vision of 20/200 where plaintiff can read, drive and see everything except fine details is not a protected disability) (attached hereto as Exhibit 9); Szmaj v. American Telephone and Telegraph, Inc., 2001 WL 1725302 at *2 (C.D. Ill.

-13-

August 7, 2001), <u>aff'd</u>, 291 F.3d 955 (7th Cir. 2002) (granting judgment as a matter of law after finding that plaintiff with strabismus was not disabled where he could do any job that did not require him to read more than 50% of the time) (attached hereto as Exhibit 10). A common theme recognized by these courts is that:

> a visual impairment which hinders, <u>or makes it more difficult for an individual to function at full visual capacity,</u> does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.

<u>See</u> <u>Cline</u>, 963 F. Supp. at 1080 (emphasis supplied).

Mr. Davis has asserted that his vision problem causes him to favor one eye, has resulted in a loss of peripheral vision and has caused "difficulty" driving, playing with children[4] and working at his present job. The record, however, does not reveal that he is precluded from or otherwise substantially limited in any of these activities.

---

[4]    "Recreational activities are not major life activities." <u>See</u> <u>Lukens v. National Railroad Passenger Corp.</u>, 2000 WL 1622745 at *4 (E.D. Pa. Oct. 25, 2000) (attached hereto as Exhibit 11). Thus, SEPTA disputes that playing with children is a protected major life activity. Regardless, the record establishes that Mr. Davis, if he chose to, could engage in a wide range of activities with children such as reading, writing, walking and/or speaking. <u>See</u> Second Admissions at Nos. 4-9. Thus, he is not substantially limited in this activity.

Mr. Davis concedes his ability to prepare for and travel to work without assistance and admits that he can read, write, hear and, under self-imposed limitations, drive a car. <u>See</u> Second Admissions at ¶¶ 1-8. These facts, as conceded by Mr. Davis, establish that his vision problem is not an ADA-protected disability.

2.    Limitations on Walking/Standing, Driving, and Sexual Intercourse and Climbing Steps Must Be Substantial to <u>Rise to the Level of A Protected Disability</u>

Concerning his knee problem, Mr. Davis alleges only that it is "very hard to walk/stand, play sports,[5] work, sexual intercourse, foot pedals in driving, climbing steps." <u>See</u> Second Interrogatories at No. 9. Mr. Davis does not allege that he is unable to partake in any of these activities nor does he identify how he is limited.

It is clear, however, that even "moderate restrictions on a Claimant's ability to walk and climb stairs are insufficient to establish a substantial limitation." <u>See</u> <u>Cade v. Consolidated Rail Corp.</u>, 2002 WL 922150 at *8 (E.D. Pa. May 7, 2002) (inability to climb up and down stairs frequently is not a disability) (attached

---

[5]    As previously stated, recreational activities are not considered to be major life activities for the purposes of the ADA. <u>See</u> <u>Lukens</u>, 2000 WL 1622745 at *4.

hereto as Exhibit 12).  Even further, there is no "substantial limitation" if an individual previously could walk fast but later as a result of a physical impairment, could only walk at a moderate pace.  See Mondzelewski, 162 F.3d at 783-84.  Finally, as for sexual intimacy, merely alleging difficulties does not equate to a "substantial limitation."  See Lukens, 2000 WL 1622745, at *4 (holding that some impediment to sexual activity is not a substantial limitation).

The record does not establish that Mr. Davis is disabled in any of these categories.  When given the opportunity to describe in detail how each of these major life activities were restricted, by his knee problem, Mr. Davis replied only that it was "very hard" to engage in these activities.  This is not enough to establish the requisite substantial limitation.

3.    To be Disabled in the Major Life Activity of **Working**, Mr. Davis Must Be Unable to Work in a Broad Class of Jobs

A "plaintiff attempting to establish disability on the basis of a substantial limitation in the major life activity of working must, at a minimum, allege that he or she is unable to work in a broad class of jobs."  See Tice v. Centre Area Transportation Authority, 247 F.3d 506, 512 (3d. Cir. 2001) (finding that an inability only to drive a bus after a back injury was not

substantial limitation under the definition of disability) (internal quotations omitted)(emphasis added); <u>see</u> <u>also</u> <u>Williams v. Philadelphia Housing Authority</u>, 230 F. Supp. 2d 631, 640 (E.D. Pa. 2002) (granting summary judgment where plaintiff failed to establish that his disability, depression, precluded him from obtaining a broad range of jobs).

Specifically, under the Equal Employment Opportunity Commission ("EEOC") regulations, when referring to the major life activity of working, the term "substantially limits" means:

> [S]ignificantly restricted in the ability to perform either a class of jobs or in a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (as relied upon in <u>Sutton</u>, 527 U.S. at 491. Even further:

> One alleging a disability "must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. <u>Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs</u>.

<u>Sutton</u>, 527 U.S. at 492.

-17-

Merely being precluded from driving a passenger bus, therefore, is not enough for Mr. Davis to establish that he is disabled in the major life activity of working.  Neither is Mr. Davis' bald allegation that he is unable to obtain certain police, security, scientific and military positions.  It is clear that Mr. Davis can and, in fact, has secured a range of other jobs including driving a delivery truck and working in medical support at a hospital.  Mr. Davis also concedes his ability to work at any available job with or without accommodations.  <u>See</u> Complaint at ¶ 19.  These circumstances do not support that he is "substantially limited" in the major life activity of working.

B.  <u>Mr. Davis Has No Record Of A Disability</u>

Individuals may also seek ADA protection if they have a record of disability.  <u>See</u> 42 U.S.C. § 12102(2)(B).  However, "[a] plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA."  <u>See</u> <u>Tice</u>, 247 F.3d at 513.  In <u>Tice</u>, the Third Circuit concluded that the Plaintiff had not demonstrated a "record of disability" merely by presenting evidence that the impairment limited his ability to drive a bus. <u>Id</u>.

-18-

Mr. Davis is not protected under this prong of the ADA. First, he had no "record of a disability" as both his vision and knee problems were discovered by SEPTA in a four month period between December of 2000 and March of 2001. Second, and even more significantly, Mr. Davis cannot establish that his allegedly recorded impairments are disabilities protected by the ADA.

For these reasons, summary judgment is appropriate on Mr. Davis' claim that he has a record of a disability.


C.    Mr. Davis Was Not "Regarded As" Disabled by SEPTA

The ADA also protects qualified individuals who are "regarded as" having an impairment that substantially limits one or more major life activities.     See 42 U.S.C. § 12102(2)(C)(defining disability).     To be considered as "regarded as" having a disability, the Plaintiff must demonstrate that:

> (1)    the employer erroneously believes that the Plaintiff has an impairment (even if he does not) that substantially limits major life activities; or

> (2)    the plaintiff has a non limiting impairment that the employer mistakenly believes limits major life activities.

-19-

<u>Tice</u>, 247 F.3d at 514 (<u>relying on</u> <u>Sutton</u> 527 U.S. at 489).[6]  Either way, the definition of "substantially limits" remains the same.

Once again, there is no evidence that supports Mr. Davis' claim that he is substantially limited with respect to any major life activity.  Accordingly, summary judgment is appropriate on the "regarded as" prong of Mr. Davis' complaint.

D.    <u>Mr. Davis Does Not Qualify For ADA Protection</u>

Even if a disability is established, a plaintiff still must be able to prove that he or she is qualified to perform the essential functions of the job they seek.  <u>See</u> <u>Bulos v. People Soft, Inc.</u>, No. Civ. A. 99-1544, 2000 WL 868532, at *3 (N.D. Cal. June 21, 2000) (attached hereto as Exhibit 13).  Whether a certain function is essential is "factual and made on a case-by-case basis."  <u>See</u> <u>Keeshan v. The Home Depot, U.S.A. Inc.</u>, 2001 WL 310601, at *5 (E.D. Pa. March 27, 2001), <u>aff'd</u> 2002 WL 1058103 (3d. Cir. May 28, 2002)

---

[6]    The Supreme Court also makes it clear that "[s]tanding alone, the allegation that respondent has a vision requirement in place does not establish a claim that respondent regards petitioners as substantially limited in the major life activity of working."  <u>Sutton</u>, 527 U.S. at 490; <u>see also</u> <u>Knoll v. Southeastern Pennsylvania Transportation Authority</u>, No. Civ. A. 01-2711, 2002 WL 31045145 (E.D. Pa. September 11, 2002) (holding that "simply requiring a plaintiff to take and pass a visual examination alone in no way demonstrates that defendant regarded plaintiff's impairment as substantially interfering with his ability to see") (attached hereto as Exhibit 15).

-20-

(concluding that a 55 hour work week was an essential function of a job) (attached hereto as Exhibit 14).

A "regular and reliable level of attendance is a necessary element of most jobs." See Tyndall v. National Education Centers, Incorporated of California, 31 F.3d 209, 213 (4th Cir. 1994) (affirming summary judgment and holding that employee who cannot meet attendance requirements of job cannot be considered "qualified"). Further, except in the unusual case where an employee can effectively perform all work-related duties at home, an employee "who does not come to work cannot perform *any* of his job functions, essential or otherwise." Id. (emphasis in original).

There is no question here that Mr. Davis had substantial problems showing up for work. Mr. Davis concedes that he was warned about his attendance problems and also concedes an attendance record that shows 22 absences. See First Admissions at 16 and 17. There is also no question that the jobs that Mr. Davis applied for after his medical disqualification require on-site attendance at SEPTA. Accordingly, Mr. Davis cannot be considered qualified for any other SEPTA job.[7]

---

[7]    In addition to his attendance problems, Mr. Davis also concedes that he was the subject of disciplinary actions. Id. at ¶¶ 17-20. Thus, making him even further unqualified for any other SEPTA job.

-21-

E.    Mr. Davis Offers No Evidence to Rebut the Legitimate, Non-Discriminatory Basis for SEPTA's Employment Actions

Even if Mr. Davis could establish a prima facie case of discrimination, his claim still must fail under the McDonnell Douglas burden-shifting analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under this analysis, a complainant must establish a prima facie case of discrimination by showing that:  (i) he belongs to a protected category; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite his qualifications, he was rejected; and (iv) the position was filled by a member of the non-protected class.  See McDonnell-Douglas, 510 U.S. at 802.  If a complainant establishes a prima facie case of discrimination, the burden of production shifts to the respondent to articulate a legitimate, nondiscriminatory reason for the employment action. See McDonnell-Douglas, 510 U.S. at 802.  Once the respondent meets its burden by articulating a legitimate, nondiscriminatory reason for the employment action, the complainant then has the burden of proving by preponderance of the evidence that the employer's proffered reason is pretextual.  See Turner v. Schering-Plough Corp., 901 F.2d 335, 341 (3d Cir. 1990).  "Mere conjecture that an employer's explanation for an adverse employment action is pretext

-22-

for intentional discrimination is an insufficient basis for denial of summary judgment....” See Holmes v. Pizza Hut of America, Inc., 1998 WL 564433 at *6 (E.D. Pa. 1998) (attached hereto as Exhibit 16). The Plaintiff must demonstrate such “weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer’s proffered legitimate reasons” such that a reasonable factfinder could rationally find them unworthy of credence. Id.

SEPTA has offered a legitimate, non-discriminatory reasons for not placing Mr. Davis into a different job. The reasons are Mr. Davis’ poor attendance and discipline problems. See Yoxtheimer Dep. at 66-73. Mr. Davis admits to his attendance record and to his suspension. See First Admissions at 15-16 and at 17-20. Mr. Davis offers no evidence to rebut the legitimacy of SEPTA’s decision. Thus, Mr. Davis’ ADA claim fails.

V.    CONCLUSION

Mr. Davis is not substantially limited in any major life activity. He did not have a record of any such limitation nor was he regarded as disabled by SEPTA. Accordingly, he is not disabled as that term is defined under the ADA. Further, he does not qualify for ADA protection because of his poor work record and inability to rebut the legitimacy of SEPTA’s decisions.

SEPTA, therefore, respectfully requests this Court to dismiss with prejudice Mr. Davis' Complaint in its entirety.

Respectfully submitted,

MILLER, ALFANO & RASPANTI, P.C.


BY: _____
    GINO J. BENEDETTI, ESQUIRE
    JODEEN M. HOBBS, ESQUIRE

Attorney I.D. Nos. 59584, 80200
Miller, Alfano & Raspanti, P.C.
1818 Market Street, Suite  3402
Philadelphia, PA 19103
(215) 972-6400

Attorneys for Defendant,
Southeastern Pennsylvania
Transportation Authority

Dated: July __, 2003

F:\PBL\JMH\SEPTA\Septa.Davis\gh000024.pld.wpd

-24-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this ____ day of July, 2003, I caused a true and correct copy of the foregoing Defendant SEPTA's Motion for Summary Judgment and Supporting Memorandum of Law to be served upon the following individual in the manner indicated below:

## <u>VIA HAND DELIVERY</u>

Richard A. Veon, Esquire
Gordon & Weinberg, P.C.
21 South 21st Street
Philadelphia, PA 19103

MILLER, ALFANO & RASPANTI, P.C.

By: _____
JODEEN M. HOBBS, ESQUIRE

F:\PBL\JMH\SEPTA\Septa.Davis\gh000024.pld.wpd

-25-