UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWNBREAN DAVIS,<br><br>        Plaintiff<br><br>   v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY,<br><br>        Defendant | CIVIL ACTION<br><br>No. 02-2665 |

**MEMORANDUM**

March 22, 2004

**Procedural Background**

On May 3, 2003, Shawnbrean Davis filed a complaint in this court against the Southeastern Pennsylvania Transportation Authority ("SEPTA"). Davis alleges that SEPTA violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955, by failing to reasonably accommodate his alleged disabilities. This court denied SEPTA's motion to dismiss on April 21, 2003. In denying the motion to dismiss, the court concluded that the defendant had made an incomplete argument for dismissal, as SEPTA's motion addressed only one category of "major life activity" (work) and there were other areas in which Davis could potentially establish disability. After the termination of discovery, on July 7, 2003, SEPTA filed the present motion for summary judgment with this court.

**Factual Background**

Davis was employed by SEPTA as a bus driver from February of 1998 to December of 2000. On December 18, 2000, Davis reported that he injured his knee while on the job at SEPTA. He began receiving Worker's Compensation benefits around this time. After treatment and care, including surgery, in March of 2001, Davis sought to return to work at SEPTA. Before returning to work, SEPTA required Davis to undergo and pass a physical examination, including a vision test.

Davis failed this vision test, and on March 21, 2001, SEPTA medically disqualified him from returning to work as a bus driver. Davis then sought alternative employment with SEPTA, specifically jobs with no minimum vision requirement. Linda Yoxtheimer, SEPTA's Director of Vocational Rehabilitation, was assigned to Davis's case. He applied for SEPTA jobs as a track laborer, mail carrier, maintenance custodian, and telephone information agent. Davis alleges that he withdrew applications for some of the jobs because Yoxtheimer told him to. However, he admits that he also focused on the track laborer position, because it paid the most and his doctors had approved the job. In her deposition, Yoxtheimer states that Davis told her that he withdrew his other applications because the track laborer was his first priority and that he told her that another SEPTA employee, Tina Christmas, had told him that he could not be considered for two jobs at the same time. Yoxtheimer Dep. at 59. Yoxtheimer also states that she was told that SEPTA was on an automatic hire of track laborers at a rate of two per month and that there were no other individuals competing with Davis for the position. Yoxtheimer Dep. at 60-62. In addition, Yoxtheimer states that she believed that Davis was going to be hired as a track laborer. Though he offers no other evidence to support the allegation, in his deposition Davis claims that he was offered the job of track laborer in front of a hearing officer, Chong Sue Lee, at the

2

Human Relations Commission, but that the offer was subsequently withdrawn. Davis Dep. at 106-07. Ultimately, Davis was not hired in any other position by SEPTA.[1]

SEPTA claims that Davis was not hired in any other positions at SEPTA because of his poor attendance and disciplinary record. According to SEPTA, from February of 1998 to December of 2000, prior to his knee injury, Davis did not report to work on 24 occasions (17 sick days and 7 absences due to emergencies at home). Davis contends that he missed 22 days from work, due to sickness and to care for his seriously ill son. SEPTA avers that under its attendance policy, Davis received credits, adjustments, and reversals for these absences, but still accumulated 19 points for absences and was warned by SEPTA that he was subject to discipline if he reached 20 points. As for his disciplinary record, on September 8, 2000, Davis was discharged from SEPTA for engaging in conduct unbecoming of a SEPTA employee. Following a hearing, however, his discharge was reduced to a one-day suspension.

Davis has 20/20 vision in his right eye, but has a static problem in his left eye that reduces his visual acuity to 20/30-. Davis has referred to his vision problems as "amblyobia" and "lazy eye." No doctor has restricted Davis's ability to work based upon his vision problem and there is no indication that it has prevented him from obtaining other employment. Davis's doctor has cleared him to work "in a tunnel and as a track laborer of any type." Davis claims that his eye dysfunction causes daily difficulties, including lack of peripheral vision, difficulty seeing from the "lazy eye," postural changes requiring view with the good eye, inability to hear proficiently due to the postural changes, and headaches due to the one good eye stress and postural (neck) changes. In addition to his eye condition, Davis has had two surgeries on his injured knee. Davis alleges that his knee injury causes numerous daily problems, including

---

[1] On April 1, 2002, Davis was terminated from employment with SEPTA because, under the union contract, his sick time had expired. Davis does not challenge his termination, only SEPTA's failure to hire him for another job.

difficulty walking, driving, climbing, working, engaging in sexual intercourse, standing, playing with his children, and participating in sports.

**Discussion**

Despite allegations in the complaint of actual disability, in Davis's response to SEPTA's motion for summary judgment Davis admits that his eye and knee problems do not rise to the level of disability as covered by the ADA. Instead, Davis's response to SEPTA's motion for summary judgment states that his theory is solely a "regarded as" theory, meaning that though he was not disabled, SEPTA regarded him as having a disability. Consequently, I will address SEPTA's motion for summary judgment only as it relates to this theory. Additionally, as analysis of an ADA claim applies equally to Davis's other claim, the PHRA claim, this summary judgment inquiry treats only Davis's ADA claim. *See Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if the dispute may affect the outcome of the suit under the governing law and is "genuine" if a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all evidence and reasonable inferences to be drawn therefrom must be construed in the light most favorable to the non-moving party. *Id.* at 242. However, where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden may be met simply by

"pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 322.

After the moving party has met its initial burden, the non-moving party must rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. The non-moving party may not defeat summary judgment by the bare assertion that the facts are sufficient to support his or her claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). Instead, the non-moving party must go beyond the pleadings themselves, by affidavits or other evidence, to designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Where, in response to a properly supported motion for summary judgment, an adverse party merely rests upon the allegations or denials in the pleading, and fails to set forth specific, properly supported evidence, summary judgment may be entered against the party. *See* Fed. R. Civ. P. 56(e).

There is no genuine issue as to material fact in the case at bar. Even when taken in the light most favorable to the Davis, the evidence is insufficient to establish liability: Davis bears the burden of proving that SEPTA regarded him as disabled and that the legitimate reasons given for SEPTA's actions (not hiring Davis for another job at SEPTA) were false or pretextual. Nevertheless, aside from the allegations in the complaint and a few statements made in Yoxtheimer's deposition, Davis offers no specific evidence, by affidavit or otherwise, that SEPTA regarded him as disabled as defined under the ADA. Additionally, Davis fails to demonstrate that SEPTA's stated reasons for his discharge were false or pretextual.

The grounds for these conclusions are as follows:

1. Under 42 U.S.C. § 12102(2)(C), individuals who are "regarded as" having a disability are also disabled under the ADA. *Sutton v. United Airlines, Inc.*, 527 U.S. 489, 491 (1999). A plaintiff may qualify for protection under the "regarded as" prong of the ADA in two ways:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Id*. When an employer misinterprets an employee's limitation and concludes that an employee is incapable of a performing a wide range of jobs, that employee is "regarded as" disabled by the employer and qualifies as disabled under the ADA. *Rinehimer v. Cemcolift*, 292 F.3d 375, 381 (3d Cir. 2002) (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999)).

In a "regarded as" claim, the analysis "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of the persons interacting or working with him." *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996)). Moreover, the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled. *Kelly*, 94 F.3d at 108-09. A "regarded as" plaintiff is required to show that the employer regards him or her as unable to work in a broad class of jobs. *Sutton,* 527 U.S. at 471.

Davis contends that he had physical impairments that limited his ability to perform some work, but concedes that they did not substantially limit any major life activity so that they might rise to the level of a "disability" as defined by the ADA. Davis contends, however, that SEPTA regarded those impairments as limiting major life activities. Nevertheless, the little evidence Davis has offered that SEPTA mistakenly believed that his actual, nonlimiting impairment substantially limited one or more major life activities is not "sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. While it is clear from the record that SEPTA was aware of Davis's impairments, both his knee and eye, by itself that is insufficient to establish that it regarded Davis as disabled. As evidence that a genuine issue of material fact exists with respect to his "regarded as" claim, Davis cites only his allegation that SEPTA first offered and then reneged on the track laborer job, and Yoxtheimer's deposition testimony that she thought track laborers were being hired at a rate of two per month and that was a "done deal." Pl's Mem. in Opp'n to Def.'s Mot. for Summ. J. at 5. However, Davis admits that Yoxtheimer was the person at SEPTA in charge of determining if employees are qualified for particular jobs due to prior injuries and that Yoxtheimer made every effort to place him in a wide variety of positions, indicating that she did not regard him as disabled. *Id.* at 3-7. Finally, Davis offers no evidence that any of the specific individuals who rejected him for the positions he applied for had any knowledge about his limitations. This does not rise to the level of specific, properly supported evidence required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(e).

2.     Under the *McDonnell Douglas* analysis, in order to establish a prima facie case of discrimination a plaintiff must show that: (i) he belongs to a protected category; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite his qualifications, he was rejected; and (iv) the position was filled by a member of the non-protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Id*. However, even when a plaintiff establishes a prima facie case of discrimination, where a defendant articulates a legitimate, nondiscriminatory reason for the action (not hiring plaintiff into another job), the

plaintiff bears the burden of proving by a preponderance of the evidence that the employer's reasons are pretextual. *See Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

In an employment discrimination claim, the plaintiff must show that the proffered legitimate reasons for an employer's action are false and that disability discrimination was the real reason. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Medcalf v. Trs. of Univ. of Pa.*, 2003 U.S. App. LEXIS 16110 (3d Cir. July 30, 2003); *Heebner v. Nationwide Mutual Insurance Company*, 2003 U.S. Dist. LEXIS 19569 (E.D. Pa. Sept. 30, 2003). In order to show that the employer's alleged reasons are mere pretext, plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the employer's proffered reasons that a reasonable factfinder could rationally find them "unworthy of credence." *Medcalf*, 2003 U.S. App. LEXIS 16110, at *8-*9 (3d Cir. July 30, 2003).

SEPTA states that Davis was not hired for another job because of his poor attendance record and disciplinary problems. Def.'s Mot. for Summ. J. at 23. SEPTA avers that under its attendance policy, Davis accumulated 19 points for absences and was warned by SEPTA that he was subject to discipline if he reached 20 points. Davis concedes that he missed 22 days of work during the time he worked for SEPTA before his knee injury and he concedes that he was warned about his attendance problems. On September 8, 2000, just three months before his knee injury, Davis was discharged from SEPTA for engaging in conduct unbecoming a SEPTA employee. Following a hearing, his discharge was reduced to a one-day suspension. Davis admits that he has a disciplinary record.

Davis asserts that SEPTA's reason of attendance and disciplinary problems "is a pretext" and that "SEPTA's proffered legitimate reasons could be considered 'weak, contradictory, and inconsistent' with the record evidence." Pl's Mem. in Opp. to Def.'s Mot. for Summ. J. at 8-9.

Yet, Davis offers no direct or circumstantial evidence that SEPTA's reasons were pretext, except that he was never terminated for his absences or disciplinary record before his knee injury or eye exam. Again, this does not rise to the level of specific, properly supported evidence required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(e).

      Accordingly, in an order accompanying this memorandum, SEPTA's motion for summary judgment will be granted.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWNBREAN DAVIS,<br><br>           Plaintiff<br><br>   v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY,<br><br>           Defendant | CIVIL ACTION<br><br>No. 02-2665 |

**ORDER**

March 22, 2004

       For the reasons given in the accompanying memorandum, it is hereby ORDERED that:

       (1)    Defendant's Motion for Summary Judgment is GRANTED.

       (2)    JUDGMENT IS ENTERED in favor of defendant Southeastern Pennsylvania Transportation Authority, and against plaintiff Shawnbrean Davis.

       (3)    Plaintiff's complaint is DISMISSED with prejudice.

       (4)    This case is CLOSED for statistical purposes.

                                                                                                               _____

                                                                                                                                Pollak, J.